# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL SHIELDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW SAUL, Commissioner of )<br>Social Security, )<br>)<br>Defendant. )<br>_____ ) | C.A. No. 20-687-JLH |

## **MEMORANDUM ORDER**

Plaintiff Michael Shields appeals from an unfavorable decision of the Commissioner of the Social Security Administration regarding his application for disability benefits and/or supplemental security income. This Court has jurisdiction under 42 U.S.C. § 405(g). The parties have consented to entry of final judgment by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

The parties filed cross-motions for summary judgment. (D.I. 15, 17.) For the reasons announced on the record at the conclusion of the parties' oral argument on May 4, 2021, the Court finds that the decision of the Commissioner is supported by substantial evidence and that there are no reversible errors.

### I.  LEGAL STANDARDS

Courts review the Commissioner's factual findings for "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the

evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610-11 (3d Cir. 2014). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability to return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II. DISCUSSION

The decision of the Court was announced from the bench at the conclusion of the hearing as follows:

> Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment will be granted.
>
> Plaintiff makes two arguments to this Court. Plaintiff's first argument is that the ALJ failed to adequately consider evidence of his obstructive sleep apnea. As an initial matter, I note that it was not entirely clear in Plaintiff's opening brief whether he was objecting to the ALJ's consideration of Plaintiff's sleep apnea at step two or step four of the five-step inquiry. In his reply brief, however, Plaintiff clarified his position that he was raising the issue only as to step four. Plaintiff argues that the ALJ erred in step four by failing to formulate Plaintiff's RFC to account for additional limitations stemming from Plaintiff's obstructive sleep apnea. I disagree.
>
> Plaintiff listed the following conditions on his application for benefits: "seizures," "heart problems," and "bipolar."[1] According to Plaintiff's treating neurologist, Dr. Wang, Plaintiff reported having nighttime seizures. However, as the ALJ discussed in his decision, Dr. Wang was doubtful that Plaintiff was suffering from nocturnal seizures.[2] Dr. Wang stated that the symptoms of Plaintiff's seizure disorder—including "feeling drained, numb, lack of concentration, etc."—might actually be explained and/or exacerbated by untreated sleep apnea and suggested that Plaintiff undergo CPAP as treatment.[3]

---

[1] (Transcript of Social Security Proceedings, D.I. 13, at 292 ("Record" or "R.").)

[2] (*Id.* at 1020.)

[3] (*Id.*)

3

Regardless, Dr. Wang completed a questionnaire regarding Plaintiff's limitations, and, in assessing the RFC, the ALJ credited Dr. Wang's opinion about Plaintiff's limitations except for two: [1] Dr. Wang's opinion that Plaintiff would need an unscheduled work break every four hours, and [2] his opinion that Plaintiff would be absent about one day per month. The ALJ found that those limitations were not supported by the medical evidence of record that indicated that Plaintiff appeared stable on his medication and had not recently had symptoms of seizures.

But, the ALJ, consistent with Dr. Wang's opinion, limited Plaintiff to no more than light work with additional limitations: he can only occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch and crawl; he can only have occasional exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gas, and poor ventilation, and no exposure to hazards such as unprotected heights and moving machinery. The ALJ also included in his RFC that Plaintiff could perform only simple, unskilled tasks with occasional interaction with co-workers that require no teamwork or tandem tasks, and could have no interaction with the public.

So putting all of this together, while Plaintiff is correct that his treating neurologist thought that his seizure symptoms might actually be obstructive sleep apnea instead of seizures, the ALJ specifically discussed that in his decision and generally credited the treating neurologist's opinion regarding limitations arising from Plaintiff's seizure symptoms. I find no error in the ALJ's treatment of the evidence of Plaintiff's sleep apnea.

In Plaintiff's reply brief he appeared to take issue with the ALJ's remark that Plaintiff's sleep apnea was "untreated."[4] [This was surprising, given] that Plaintiff's opening brief acknowledged that he was unable to treat his sleep apnea for at least some period of time because he was living in a homeless shelter and that he had suffered from "mask issues" in the past that made the prescribed treatment difficult.[5] Indeed, Plaintiff suggests in a footnote that the ALJ should have addressed the reasons for Plaintiff's inability to treat his sleep apnea and that the ALJ's failure to do so was further error, but Plaintiff does not explain why he would be entitled to greater limitations in his RFC if he was undergoing successful

---

[4] (D.I. 19 at 1.)

[5] (D.I. 16 at 9, 12.)

<mark>4</mark>

treatment for his sleep apnea.[6] I therefore find that it was not error for the ALJ to refer to Plaintiff's sleep apnea as "untreated."

Plaintiff's second overarching argument is that the ALJ improperly discounted the opinions of Plaintiff's treating physicians. Plaintiff contends that the ALJ violated the treating physician rule when he disregarded certain opinions offered by Dr. Kamar Adeleke, Plaintiff's treating cardiologist, and Dr. Aliya Carillo, Plaintiff's family physician, and [when the ALJ] assigned only some weight to the opinion of Dr. Wang, Plaintiff's neurologist. According to Plaintiff, if properly credited, the opinions of his treating physicians would have supported greater limitations, including that Plaintiff would miss more than four days per month of work and that he could perform at most only sedentary work.

According to the treating physician rule, the opinions of treating physicians "are entitled to special significance and, when supported by objective medical evidence of record and consistent with other substantial evidence of record, are entitled to controlling weight."[7] "The ALJ cannot disregard the opinion of a treating physician without explaining the reasoning for rejecting the opinion and referencing objective medical evidence conflicting with the opinion."[8] But, where other medical evidence conflicts with the opinions of a treating physician, "the ALJ may properly resolve the conflict."[9]

The ALJ did not violate the treating physician rule. The ALJ considered the opinions of Plaintiff's treating physicians and the contradictory medical evidence [and properly resolved the] conflict. I find that the ALJ's resolution of the conflict was supported by substantial evidence. The ALJ explained that Dr. Adeleke's opinion was contradicted by, among other evidence, the medical records showing that Plaintiff's coronary artery disease was under control and that his cardiac stress tests were normal, and Dr. Adeleke's own recommendation that Plaintiff walk for at least 45 minutes per day. The ALJ also explained that Dr. Carillo's opinion was based on Plaintiff's self-reported limitations that were unsupported by

---

[6] (*Id.* at 12 n.2.)

[7] *Lambertson v. Astrue*, 625 F. Supp. 2d 160, 175 (D. Del. 2005).

[8] *Id.*

[9] *Id.*

5

accompanying physical exams and other record evidence. Finally, the ALJ explained that although he assigned some weight to Dr. Wang's opinions, as discussed earlier, he did not credit Dr. Wang's assessment that Plaintiff would need unscheduled breaks and monthly absences because those limitations lacked support in the record medical evidence.

I also note that other evidence in the record — including the opinions of two state examiners[10] and the opinion of Dr. Irwin Lifrak[11] — indicated that Plaintiff had less severe limitations even than those ultimately incorporated by the ALJ into Plaintiff's RFC. In sum, I find that the ALJ's decision complied with the treating physician rule and is supported by substantial evidence.

Plaintiff also suggests that the ALJ should have sought clarifications from Plaintiff's treating physician to harmonize their opinions with the record evidence. According to Plaintiff, the ALJ's failure to do so was a breach of his duty to adequately develop the record. However, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition."[12] The ALJ's duty is only "to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled."[13] Plaintiff does not argue that his medical history is not complete and cites no authority for the proposition that an ALJ must clarify opinions of treating physicians with respect to record evidence.

For all of these reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

---

[10] (R. at 133–34, 141.)

[11] (*Id.* at 504–05.)

[12] *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see also Byers v. Saul*, No. 19-12247, 2021 WL 870819, at *2 (D.N.J. Mar. 9, 2021).

[13] *Money*, 91 F. App'x at 216.

## III. CONCLUSION

Plaintiff's motion for summary judgment (D.I. 15) is DENIED and Defendant's motion for summary judgment (D.I. 17) is GRANTED.

The Clerk of Court is directed to enter judgment in favor of Defendant and to CLOSE the case.

Dated: June 1, 2021

                                                The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE